# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| DARLA M. BUCKLAND, Plaintiff, | Case No. 1:18-cv-494 Barrett, J. Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Darla M. Buckland brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 11), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply memorandum. (Doc. 15).

**I. Procedural Background**

Plaintiff filed her applications for DIB and SSI in March 2015, alleging disability since January 31, 2011 due to major depression, anxiety, panic attacks, trouble focusing, concussion injury/head trauma, attention deficit disorder ("ADD"), arthritis, ankle, foot, and leg problems, right wrist problems, and sleep problems. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was afforded a hearing before administrative law judge ("ALJ") Mark Hockensmith on May 30, 2017. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On November 14, 2017, ALJ Hockensmith issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's

request for review by the Appeals Council was denied, making the decision of ALJ Hockensmith the final decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

2

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

Plaintiff applied for DIB and SSI in January 2008. These applications were denied initially and upon reconsideration. A hearing was held in August 2010 before ALJ Amelia Lombardo. On December 15, 2010, plaintiff's applications were denied by ALJ Lombardo. (Tr. 64-75). Plaintiff again filed applications for benefits on February 21, 2011 and May 19, 2011. (Tr. 15). On January 19, 2013, ALJ Mary Withum issued a decision finding that plaintiff was not disabled.[1]

Plaintiff applied for DIB and SSI again in February 2013, and her applications were denied initially and upon reconsideration. Plaintiff asked for a hearing before an ALJ, but she and her attorney later asked that the case be dismissed without a hearing and acknowledged that the April 29, 2013 reconsideration determination would remain in effect. (Tr. 84).

In rendering his decision on plaintiff's SSI and DIB applications filed in March 2015, ALJ Hockensmith recognized that he was bound under the principles of administrative res judicata to preclude consideration of the issue of disability before April 29, 2013. Thus, ALJ Hockensmith determined that the period under consideration began on April 30, 2013, the day after the reconsideration determination. ALJ Hockensmith also determined that plaintiff produced "new and material evidence documenting a significant change" in her condition since

---

[1] ALJ Withum's decision does not appear to be included in the certified administrative record.

3

ALJ Withum's decision. Thus, ALJ Hockensmith determined that ALJ Withum's previous RFC is not binding. (Tr. 15-16).

ALJ Hockensmith applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The [plaintiff] has not engaged in substantial gainful activity since January 31, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine tasks in a static work environment with few changes in routine, no fast-paced work or strict production quotas, and occasional interaction with the public, coworkers, and supervisors.

6. The [plaintiff] is capable of performing past relevant work as an order filler. This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has

---

[2] Plaintiff also has past relevant work as a seamstress.

4

transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. In the alternative, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the [plaintiff] can also perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 31, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 18-26).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium, unskilled occupations such as industrial cleaner (300,000 jobs nationally), floor waxer (100,000 jobs nationally), and packager (125,000 jobs nationally). (Tr. 26, 56-57).

5

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Construing plaintiff's pro se statement of errors liberally, plaintiff identifies the following errors in the ALJ's decision. Plaintiff alleges that the ALJ failed to properly consider her physical impairments, including her undiagnosed symptoms of pain, balance, and memory problems that stem from a childhood traumatic brain injury. (Doc. 11 at 11). Plaintiff also alleges that the ALJ failed to properly consider her subjective complaints, including the increased time it takes her to complete certain daily activities due to pain and other physical limitations. (*Id.*).[4]

**E. The ALJ's decision is supported by substantial evidence.**

Because plaintiff is proceeding pro se, the Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings. *See Troth v.*

---

[4] Plaintiff also criticizes certain state and local agencies, as well as her previous attorney, for allegedly failing to submit certain records in support of her claims for benefits. Plaintiff also alleges that her Social Security number was used for fraud. (Doc. 11 at 3-4, 15). However, judicial review in an action under 42 U.S.C. § 405(g) is limited to whether the Commissioner's decision denying benefits is supported by substantial evidence. Therefore, the Court is without jurisdiction to consider any additional claims beyond the denial of plaintiff's DIB and SSI applications.

*Comm'r of Soc. Sec.*, No. 3:11-cv-272, 2012 WL 1185999, at *2 (S.D. Ohio Apr. 9, 2012) (Black, J.); *Angel v. Comm'r of Soc. Sec.*, No. 1:06-cv-857, 2008 WL 2795803, at *13 (S.D. Ohio July 16, 2008) (Spiegel, J.). The Court has considered the issues raised by plaintiff as well as those presented by the Commissioner's responsive memorandum. The Court finds after a careful review of the record that the decision of the ALJ is supported by substantial evidence and should be affirmed.

First, the record substantially supports the ALJ's finding that plaintiff suffers from severe impairments of depression and anxiety. Plaintiff appears to challenge the ALJ's finding that she suffered from no severe physical impairments. (*See* Doc. 11 at 11).

The regulations define a severe impairment or combination of impairments as one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.922(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ finds that the claimant "has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "This rule is predicated on the notion that the ALJ 'properly could consider [the] claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity." *Id.* (quoting *Maziarz*, 837 F.2d at 244).

Here, the ALJ considered plaintiff's alleged physical impairments, including her allegations that she suffers from wrist and leg pain. The ALJ concluded that these alleged impairments did not have more than a minimal effect on her ability to perform basic work activities based on the lack of objective findings in the record and plaintiff's reports of daily activities. (Tr. 18-19). In making this finding, the ALJ noted that while plaintiff had been diagnosed with right wrist tendonitis, her x-rays only showed some narrowing with no further treatment, and plaintiff reported that she enjoyed crafting, needlework, and working in the garden. (Tr. 18). In addition, plaintiff treated her wrist tendonitis with ibuprofen, ice, rest, and braces. (*Id.*). Likewise, while plaintiff alleged leg pain and testified that that her left leg occasionally gives out while walking, the record only demonstrated that she had, at most, superficial varicose veins in the left lower extremity. There was only one instance of mild tenderness to palpation noted in the record. (*Id.*). Other than these findings, plaintiff's "strength, muscle tone, gait, stance, pedal pulses, deep tendon reflexes, and range of motion [were] always recorded as normal, and she never reported an inability to bear weight, a loss of sensation, muscle weakness, or numbness." (*Id.*) (citing Exhs. D1F/5 and 11, D2F/10, 3F, D10F/8, and

8

D13F). After making this finding, the ALJ continued to step four of the evaluation process and considered both plaintiff's severe and non-severe conditions. In weighing the opinions of consultative examiner Dr. Danopulos and state agency reviewing physicians Drs. Mikalov and Torello, the ALJ considered that all of these physicians concluded that plaintiff's physical impairments were not severe, given normal findings in her physical examinations and the lack of treatment for physical symptoms. (Tr. 24). Plaintiff has not directed the Court to any additional objective evidence that indicates how inclusion of her physical conditions as severe impairments would have changed the ALJ's assessment of her functional limitations. Therefore, the Court finds the ALJ did not err by characterizing plaintiff's physical impairments as non-severe.

Second, the Court finds that the ALJ's mental RFC finding for a full range of work with a number of non-exertional work restrictions is supported by substantial evidence. The ALJ first summarized plaintiff's mental health records from the relevant period. (Tr. 22-23). The ALJ noted that the record supported a "finding of moderate limitations in functional abilities as a result of [plaintiff]'s symptoms," but plaintiff's condition had nevertheless worsened since the prior ALJ decision. (Tr. 22). The ALJ acknowledged that plaintiff had a "longstanding history of depression and anxiety of varying intensity." (*Id.*). Plaintiff received treatment for her mental impairments through psychotropic medications, therapy, and the assistance of her case manager. The ALJ also noted that at times plaintiff on her own discontinued individual and group therapies. (*Id.*). In addition, treatment records from Solutions Community Counseling and Recovery Centers ("Solutions") documented that plaintiff's progress was stable and even better at times. (Tr. 22-23). Plaintiff self-reported that she was doing okay and feeling better, even though her symptoms sometimes persisted. (Tr. 865—in October 2016 plaintiff reported after the death of her sister that she was doing okay, felt a little better, and staying busy helped; Tr.

875—plaintiff reported that she was doing okay in January 2017; Tr. 892—plaintiff reported in February 2017 that she is "doing better" despite feeling depressed and unable to focus).

In light of these records, the ALJ considered and afforded "great weight" to the opinion of plaintiff's clinical nurse practitioner at Solutions, Ms. Lauren Mente, who treated plaintiff since August 2016. (Tr. 23). In a psychiatric note from October 25, 2016, Ms. Mente noted:

> In my clinical opinion, at this time, [plaintiff] continues to have moderate impairment of ability to interact with others in social situations. In my clinical opinion, at this time, she has moderate to extreme impairment of ability to perform tasks that require sustained concentration and persistence. In my clinical opinion, at this time, she has mild to moderate impaired ability to respond appropriately to changes in the work setting. In my clinical opinion, at this time, she has moderate impaired ability to remember locations, workday procedures/instructions, behave predictably, and maintain personal appearance and hygeine [sic]. In my clinical opinion, at this time, [plaintiff]'s condition is likely to deteriorate if she is placed under stress, particularly under the stress of a full work day.

(Tr. 587). The ALJ explained that Ms. Mente's opinion that plaintiff primarily suffered from moderate limitations was consistent with records from the past two years assigning plaintiff a GAF score of 54.[5] (Tr. 22-23). The ALJ also explained that Ms. Mente's opinion was consistent with plaintiff's activities, which include talking to her mother daily, visiting her daughter three to four times per week, and walking to the grocery store. (*Id.*). To account for Ms. Mente's opinion that plaintiff's condition would "likely deteriorate" with stress, the ALJ limited plaintiff's mental RFC to preclude plaintiff from performing fast-paced work or work with strict production quotas. (Tr. 21).

The ALJ's RFC finding is also supported by the opinions of state agency reviewing psychologists Drs. Zeune and Tishler. Courtney Zeune, Psy.D., reviewed the record on initial

---

[5] GAF stands for "Global Assessment of Functioning." A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006). *DSM–IV–TR* at 34 (capitalization and boldface omitted).

10

consideration on August 11, 2015. (Tr. 108-110). Dr. Zeune opined that plaintiff was either not significantly limited or moderately limited in the areas of understanding and memory, sustained concentration and persistence, social interactions, and adaptation. (*Id.*). Specifically, Dr. Zeune opined that plaintiff can understand and remember simple and multistep tasks, maintain attention, concentration, persistence, or pace for simple and multistep tasks in an environment without strict production rates or quotas, have occasional and superficial interactions with the general public, and respond appropriately to supervisors and coworkers. (Tr. 108-09). Dr. Zeune opined that plaintiff would function best in a "relatively static work environment." (Tr. 110). Carl Tishler, Ph.D., reviewed the record for reconsideration purposes on October 6, 2015 and affirmed Dr. Zeune's assessment of plaintiff's mental limitations. (Tr. 135-137). The ALJ afforded these opinions "some weight" because they were consistent with Ms. Mente's opinion and the evidence of record documenting moderate limitations, but the ALJ ultimately concluded that plaintiff's RFC warranted greater limitations in dealing with coworkers, supervisors, and too much stress. (Tr. 24). In sum, the ALJ properly weighed the mental health opinions of record and concluded that the nonexertional limitations assessed in the RFC were sufficient to accommodate plaintiff's moderate limitations in mental functioning.

Finally, the Court concludes that the ALJ properly evaluated plaintiff's subjective complaints in accordance with applicable law. The SSA rescinded SSR 96-7p and replaced it with SSR 16-3p, which is applicable to agency decisions issued on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p therefore applies to the ALJ's decision issued in this case on November 14, 2017. SSR 16-3p eliminates "the use of the term 'credibility'" from the SSA's sub-regulatory policy and clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Under SSR 16-3p, "an ALJ

11

must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-cv-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (Report and Recommendation), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018).

The regulations and SSR 16-3p describe a two-part process for evaluating an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, *3-8. The ALJ's assessment of a claimant's subjective complaints and limitations must be supported by substantial evidence and based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of this decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

In this case, the ALJ conducted a thorough review of the record and evaluated plaintiff's subjective complaints in accordance with 20 C.F.R. §§ 404.1529(c), 416.929(c) and SSR 16-3p. The ALJ found that while plaintiff's medically determinable impairments could reasonably be

expected to produce the alleged symptoms, plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (Tr. 22). In making this determination, the ALJ cited the (1) lack of supporting objective medical evidence, (2) plaintiff's daily activities, and (3) the mental health opinion evidence of her treating nurse practitioner Ms. Mente and the state agency reviewing psychologists Drs. Zeune and Tishler. These factors substantially support the ALJ's finding that plaintiff's allegations regarding her symptoms were not entirely consistent with the medical and other evidence of record.

Plaintiff testified that she suffers from panic attacks that are triggered while driving, leaving the house, and during thunderstorms. (Tr. 40-41). Plaintiff also testified that she does not have as many panic attacks now as before. (Tr. 41). Plaintiff also testified that she suffers from post-traumatic stress, but she was not abused as a child. (Tr. 43). Plaintiff stated that there were times that she "couldn't talk in situations at all" and did not talk during sixth grade or her senior year of high school. (*Id.*). Plaintiff explained that these symptoms "probably resulted from my head injury." (*Id.*). Despite these symptoms, plaintiff stated that she had not completed a neuropsychological evaluation. (Tr. 42-43). Plaintiff stated that her case manager was helping her organize appointments and looking for a regular primary physician for a check-up appointment. (Tr. 44). When asked about her activities, plaintiff testified that she talks to her mom every other day, visits her daughter three to four times a week, and walks a block to the grocery store. (Tr. 44-45). In a function report from June 2015, plaintiff reported that she has issues with impulse control and "smelling things" due to PTSD and ADHD, which are connected to an untreated concussion and brain injury as a child. (Tr. 296). Plaintiff also reported that she has panic attacks and cannot be consistent or follow routines for long periods of time. (Tr. 289).

13

Substantial evidence supports the ALJ's determination plaintiff's testimony is not supported by plaintiff's mental health records, daily activities, and the opinion evidence. As stated above, the ALJ conducted a comprehensive review of plaintiff's mental health records and concluded that the record only supported a finding of moderate limitations. In addition, Ms. Mente and Drs. Zeune and Tishler concluded that plaintiff was no more than moderately limited in her mental functioning. Under these circumstances, the ALJ reasonably found that plaintiff's subjective complaints of panic attacks and other symptoms were not disabling.

In addition to the lack of objective evidence to support plaintiff's allegations of disabling mental impairments, the ALJ reasonably relied on plaintiff's daily activities that he found were inconsistent with plaintiff's allegations of disabling impairments. The ALJ noted that plaintiff's testimony was inconsistent with her daily activities. (Tr. 23). Plaintiff testified that she had panic attacks when leaving the home, but she reported going to the store and visiting family. In addition, plaintiff testified that her panic attacks are better now than before. (*Id.*). The ALJ noted that plaintiff performs indoor cleaning and laundry, walks to the store, and is able to care for her personal needs such as dressing, grooming, and feeding herself and the pets. (Tr. 23) (citing Tr. 290-91).

Plaintiff argues that the ALJ failed to consider the time it takes to complete these activities presently as compared to the past. (Doc. 11 at 13). Plaintiff states that the medical records substantiate that she is unable to bear weight on her legs and has a loss of sensation, muscle weakness, and numbness. (*Id.*). However, as concluded above, the ALJ properly concluded that plaintiff's physical impairments were not severe impairments in light of the objective evidence of record showing normal findings. Even if the ALJ did err in failing to recognize plaintiff's allegations that her daily activities take longer to perform, "subjective

allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986). Plaintiff has not presented objective evidence substantiating her subjective complaints of either physical or mental limitations. The ALJ's decision clearly reflects that he considered the required factors in assessing plaintiff's subjective complaints and limitations and that his decision is substantially supported by the record evidence.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: 8/12/19

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DARLA M. BUCKLAND,
Plaintiff,

Case No. 1:18-cv-494
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).